1
2
3
4
5

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

6
7
8
9
10
11
12

| | |
|---|---|
| **GUARDIAN PROTECTION PRODUCTS, INC.,**<br><br>　　　　**Plaintiff/Counterdefendant,**<br><br>　　**v.**<br><br>**G.P.P., INC. d/b/a GUARDIAN INNOVATIVE SOLUTIONS,**<br><br>　　　　**Defendant/Counter-claimant.** | **Case No. 1:20-cv-01680-SKO**<br><br>**ORDER GRANTING DEFENDANT/COUNTER-CLAIMANT G.P.P., INC'S MOTION TO EXTEND THE FACT DISCOVERY DEADLINE TO PERMIT ADDITIONAL FACT DISCOVERY AND TO PERMIT DISCLOSURE UNDER THE PROTECTIVE ORDER**<br><br>**(Doc. 62)** |

13

## I.    INTRODUCTION

14
15
16
17
18
19
20

On October 17, 2024, Defendant and Counter-claimant G.P.P., Inc. ("GIS") filed a motion to modify the pretrial scheduling order to extend the fact discovery deadline to allow additional fact discovery and to permit disclosure under—or in the alternative modify—the parties' Stipulated Protective Order (the "Protective Order") (Doc. 38).  (Doc. 62).  The Court has considered the Motion, Opposition (Doc. 67), and Reply (Doc. 68), as well as the supporting exhibits.  For the reasons set forth below, the Court GRANTS GIS's request to (1) extend the discovery deadline for the limited purposes set forth in the motion and (2) modify the Protective Order.

21

## II.    BACKGROUND

22
23
24
25
26
27
28

On November 24, 2020, Guardian Protection Products, Inc. ("Guardian") filed this action against GIS seeking declaratory relief and damages stemming from an alleged breach of contract and implied covenant of good faith and fair dealing.  (Doc. 1 ("Compl.").)  On February 22, 2021, GIS answered and asserted counterclaims mirroring the claims asserted by Guardian.  (Doc. 7 ("Ans. & Countercl.").)  As relevant to this dispute, the claims include allegations that Guardian received information from third-party customer, American Freight, informing Guardian that GIS had failed to report warranty sales in violation of the contract between Guardian and GIS.  As such, these

1   allegations relate to Guardian's reason for terminating the contract—and their defense against GIS'

2   counterclaims (Ans. & Countercl. ¶¶ 7–15)—and the bases for damages. (Compl. ¶¶ 16–27.)

3          On April 15, 2021, the Court held a scheduling conference and then issued a scheduling

4   order setting the case schedule and relevant deadlines.  (Doc. 30.)  The parties then filed a stipulated

5   protective order (Doc. 37) in compliance with E.D. Cal. Local Rule 141.1, which the Court entered

6   on August 23, 2021.  (Doc. 38.)  The stipulated Protective Order includes two relevant exceptions

7   to the prohibition on disclosure to third parties:

8          14. The designation of any document as "CONFIDENTIAL" or "CONFIDENTIAL:
9          ATTORNEYS' EYES ONLY" shall not preclude any party from showing that document to
           any person (a) who appears as the author or as a recipient on the face of the document; (b)
10         who has been identified by the Designating Party as having been provided with the
           document.

11

12         17. Nothing in this Protective Order shall limit or affect the rights of any party to use or
           disclose any information or thing that has not been obtained through, or derived as a result
13         of, this action.

14    (Doc. 38 ¶¶ 14, 17).  The Protective Order also includes a provision allowing for modification: "29.

15   Nothing in this Protective Order shall be deemed to limit, prejudice, or waive any right of any party

16   or person . . . (b) to seek to modify or obtain relief from any aspect of this protective order." (*Id.* ¶

17   29)

18         The parties then stipulated to several modifications of the scheduling order (Docs. 40, 42,

19   44, 48, 50, 53, 60), which the Court entered (Docs. 41, 43, 46, 49, 51, 54, 61).  The most recent

20   stipulation to modify the scheduling order (Doc. 60), was filed one day before the instant motion.

21   That stipulation sought an extension of the parties' expert discovery deadline, non-dispositive

22   motion filing deadline, and non-dispositive motion hearing, but did not seek reopening of fact

23   discovery.

24         In the instant motion, GIS seeks reopening of the fact discovery for three limited purposes:

25         1. Obtaining third-party discovery from OnPoint Warranty Solutions, LLC
26         ("OnPoint") and/or RPM International, Inc. ("RPM") on Guardian and OnPoint's
           partnership in the furniture warranty business beginning in or around January
27         2021, and the sale of Guardian from RPM to OnPoint in or around January 2023;

28

1

2. Serving a deposition subpoena on and taking the deposition of Johnny Green (former Vice President and General Manager of Guardian); and

2

3

3. Completing all previously served fact discovery, including with respect to obtaining information from American Freight and raising any related disputes concerning that discovery to the Court.

4

5   **A.      Relevant Discovery Timelines Regarding GIS's Request to Reopen Fact Discovery**

6          1.   <u>OnPoint Warranty Solutions, LLC & RPM International, Inc.</u>

7          On May 9, 2023, approximately four months before the then-scheduled close of fact

8   discovery, counsel for GIS emailed counsel for Guardian stating "[w]e saw in the news recently that

9   Guardian was purchased by OnPoint" and inquiring "[i]n light of that, is your firm staying on as

10  counsel for Guardian in the two cases." (Doc. 67, Ex. 2).  Neither party provides evidence regarding

11  a response from Guardian.

12         On August 13, 2024, GIS served Guardian with Interrogatory No. 7—requesting "Guardian"

13  "[i]dentify all material facts concerning Guardian's sale of the warranty business."  (Doc. 62, Ex. F,

14  Black Decl. ¶ 10; Doc. 67, Rudin Decl. ¶ 24).  That same day, GIS served Guardian with Requests

15  for Production Nos. 44—requesting "[a]ll documents concerning Guardian's sale of its warranty

16  business"—and 45—requesting "[a]ll documents concerning Guardian's valuation of its warranty

17  business."  (Doc. 62, Ex. G, Black Decl. ¶ 10).

18         On August 30, 2024, during a meet and confer between the parties, GIS raised the issue of

19  Topic 15 as stated in GIS' 30(b)(6) deposition notice.  (Doc. 62, Black Decl. ¶ 8–9).  That notice

20  listed Topic 15 as seeking testimony regarding Guardian's "strategies, plans, or business models

21  relating to selling to customers based in Ohio before or after termination either directly or through

22  a distributor other than GIS."  *Id.*  During this meet and confer and a subsequent email on September

23  10, 2024, GIS clarified that Topic 15 included testimony about "the money made by Guardian in

24  connection with the sale of the warranty business."  (Doc. 62, Ex. H).  Guardian did not object,

25  suggest that it would be unable to provide this information, or state that such a sale had not occurred.

26  *Id.*

27         On September 12, 2024, Guardian responded to Interrogatory No. 7, objecting on various

28  grounds and stating "None.  This Responding Party did not sell its warranty business."  (Doc. 62,

1    Ex. F).  This response was verified by Jed Rovin, listed as Vice President and General Manager of

2    Guardian Protection Products.  *Id.*  On the same day, Guardian responded to GIS' Request for

3    Production Nos. 44 and 45. (Doc. 62, Ex. G).  Guardian objected to GIS' Request for Production

4    No. 44 and represented despite "a diligent search and reasonable inquiry" Guardian was "unable to

5    comply because such documents never existed." *Id.*  As to Request for Production No. 45, Guardian

6    objected to the production without further comment.  *Id.*

7            On September 16, 2024, Guardian confirmed that Rovin would be produced as a 30(b)(6)

8    witness competent to testify to, among other things, Topic 15.  (Doc. 62, Ex. H).

9            On September 17, 2024—after the formal close of fact discovery on September 13, 2024—

10   GIS deposed Rovin, who at the time of the deposition identified himself as "Senior vice president

11   of retail at OnPoint Warranty."  (Doc. 62, Ex. J).  Rovin testified that RPM, Guardian's parent

12   company (Doc. 2), had "arranged for the assets to be transferred over, and Guardian -- all Guardian

13   business went with OnPoint Warranty" and more specifically stating "the service contracts, the

14   warranties, yes, that -- that did go over" (Doc. 62, Ex. J).

15           2.   Johnny Green

16           On August 1, 2024, about a month and a half before the close of fact discovery, counsel for

17   Guardian reached out to counsel for GIS seeking the availability of several witnesses for deposition.

18   (Doc. 62, Ex. L).

19           On August 12, 2024, GIS informed Guardian via email that it would be seeking to depose

20   two former employees, including Johnny Green (former Vice President and General Manager), for

21   whom Guardian, in a related matter, had repeatedly accepted service.  (Doc. 62, Ex. L; Doc. 67,

22   Rudin Decl. ¶ 23; Doc. 68 at 10).  A little over a week later, on August 20, 2024, counsel for

23   Guardian responded stating that those employees were "no longer employed by Guardian and we

24   are not authorized to accept a deposition notice on their behalf and we do not know their availability

25   for a deposition in this matter."  (Doc 62, Ex. L; Doc. 67, Rudin Decl. ¶ 26).  The next day, during

26   a meet and confer, Guardian represented that they did not have contact information for either former

27   employee.  (Doc. 62, Black Decl. ¶ 5; Doc 67, Rudin Decl. ¶ 26–27).  Less than a week after the

28   meet and confer, on August 26, 2024, counsel for Guardian represented in an email that it was

1  looking into the last known contact information for the former employees.  (Doc. 62, Ex. L, Doc.

2  62, Black Decl. ¶ 5).  The next day, August 27, 2024, counsel for Guardian emailed GIS the

3  addresses it had for the former employees at the time they left Guardian's employment.  (Doc. 62,

4  Ex. M).

5        On August 28, 2024, GIS provided notice to Guardian that it had subpoenaed the former

6  employees, including Johnny Green.  (Doc. 62, Ex. O; Dec. 67, Rudin Decl. ¶ 26–27).  GIS then

7  made several unsuccessful attempts to serve Green at his home.  (Doc. 62, Black Decl. ¶ 6).

8        On August 30, 2024, GIS successfully served the other employee for a deposition scheduled

9  for September 6, 2024.  (Doc. 62, Black Decl. ¶ 6).  The day before the deposition was scheduled,

10  GIS cancelled the deposition due to a lack of communication from that employee confirming

11  attendance.  (Doc. 62, Ex. N).  Only when GIS informed Guardian that it had cancelled the

12  deposition, did Guardian alert GIS to its representation of the other former employee.  *Id.*  In

13  response, GIS asked Guardian to clarify whether Guardian's counsel would also be representing

14  Green in light of its prior representation that Guardian was not in contact with either former

15  employee and was not authorized to accept service on their behalf.  *Id.*

16        Counsel for Guardian replied on September 9, 2024, stating that they would likely represent

17  Green upon service, but that they were not yet authorized to represent him.  *Id.*  As of the time the

18  present motion was filed, GIS has remained unable to serve Green and has no confirmation as to

19  whether counsel for Guardian is presently in contact with Green.  (Doc. 62, Black Decl. ¶ 7).

20        On September 13, 2024, the date fact discovery closed, GIS proposed stipulating to extend

21  the fact discovery deadline to allow for other former employee's deposition after the September 6,

22  2024 deposition was cancelled and given that GIS had been unsuccessful in attempts to reschedule

23  before the deadline.  (Doc. 62, Ex. C).  Guardian did not agree to the stipulation, stating that it did

24  not think the original deposition should have been cancelled, but that they were nonetheless willing

25  to reschedule the deposition beyond the fact discovery deadline without formal extension and

26  revision of the case schedule.  *Id.*  In a later exchange that day in the same email thread, Guardian

27  clarified that it would "cooperate in good faith" to complete discovery "that has been timely served

28  by the parties."  *Id.*

1      3.   <u>American Freight</u>[1]

2          On January 6, 2022, Guardian served non-party American Freight LLC with a subpoena

3   duces tecum seeking multiple requests for production.  (Doc 62, Ex. Q).

4          On March 15, 2024, American Freight produced all of their responsive documents, but did

5   not produce the relevant custody documentation.  (Doc. 62, Exs. S, T).

6          On August 21, 2024, during a meet and confer between the parties, GIS raised a concern that

7   Guardian had not provided GIS with a copy of any documents produced by American Freight in

8   response to Guardian's January 2022 subpoena.  (Doc. 62, Black Decl. ¶ 12).  That same day, GIS

9   sent its own document and deposition subpoenas to American Freight (Doc. 62, Exs. A, B) and

10  confirmed service on August 22, 2024 (Doc. 62, Black Decl. ¶ 11).

11         On August 27, 2024, GIS followed up with Guardian via email, inquiring about production

12  from American Freight; Guardian replied that it was "anticipating a supplemental production of

13  documents no later than [August 29, 2024]."  (Doc. 62, Ex. M).

14         On August 30, 2024, in-house counsel for American Freight contacted GIS seeking an

15  extension to comply with GIS' August 22, 2024 subpoena.  (Doc. 62, Black Decl. ¶ 11). During a

16  meet and confer between Guardian and GIS that same day, the parties agreed to grant American

17  Freight an extension through September 20, 2024, a week beyond the fact discovery deadline.  (Doc.

18  62, Black Decl. ¶ 11; Doc. 67, Rudin Decl. ¶ 29).  The parties further agreed that, should American

19  Freight need a further extension, an adjournment of the expert disclosure dates could be appropriate.

20  (Doc. 62, Black Decl. ¶ 11; Doc. 67, Rudin Decl. ¶ 29).

21         On the fact discovery deadline of September 13, 2024, Guardian produced to GIS what it

22  had received in production from American Freight in March 2024 as a folder of 148 native

23  spreadsheets without identification, Bates stamps, or other metadata identifying the documents

24  (Doc. 62, Black Decl. ¶ 4).  That same day, GIS reached out to Guardian via email alerting Guardian

25  that American Freight had requested an extension until at least October 9, 2024, and seeking

26  Guardian's agreement to a stipulation extending the fact discovery deadline and revising the case

27

28  [1] The Court finds that GIS' ability to complete the timely-served discovery as to American Freight is not at issue.  *See infra*.  However, because the Court also provides a finding in the alternative as to diligence, the Court provides facts relevant to that finding here.

1    schedule. (Doc. 62, Ex. C). Guardian replied, stating that it would not agree to a general extension

2    of the fact discovery deadline, given that it had already expressed its agreement to allow American

3    Freight additional time to comply with the subpoenas if needed without more broadly extending the

4    fact discovery deadline. *Id.*

5        On October 16, 2024, GIS reached out to Guardian via email to request another meet and

6    confer to discuss, among other things, Guardian's position with respect to extending the fact

7    discovery deadline. (Doc 62, Ex. E). At a meet an confer later that day, GIS advised Guardian that

8    it would be willing to narrow its request to reopen to the limited reopening now seeks in the present

9    motion. (Doc. 62, Black Decl. ¶ 15). Guardian refused to stipulate to the reopening of fact

10    discovery, even for limited purposes. *Id.*

11 **B.**      **The Parties' Protective Order Dispute**

12        In addition to the request for the reopening of fact discovery, GIS also seeks a declaration

13    that they may share documents with third-party American Freight, under the terms of the stipulated

14    Protective Order, or, in the alternative, a modification of the Protective Order.

15        At a high level, GIS seeks information from American Freight regarding the warranty sales

16    Guardian claims GIS failed to report in violation of the contract between Guardian and GIS—which

17    forms the basis of Guardian's claims and defense of its termination of the contract.

18        In discovery, GIS obtained two documents labeled "GUARDIAN000001" and

19    "GUARDIAN000002" from Guardian that contain information on the "missing registrations" that

20    form the basis of Guardian's claims and defenses and are which Guardian obtained directly from

21    American Freight. (Doc. 62, Ex. T). Because of Guardian's alleged deficiencies in turning over

22    what they received in response to their subpoena of American Freight (*see supra*), GIS subpoenaed

23    American Freight directly. (Doc. 62, Exs. A, B, Black Decl. ¶ 11).

24        On August 30, 2024, in response to the August 22, 2024 subpoena, American Freight

25    requested that GIS narrow the scope of its subpoena to facilitate efficient discovery. (Doc. 62, Black

26    Decl. ¶ 11).

27        On September 23, 2023, counsel for GIS states he spoke with counsel for Guardian about

28    sharing with American Freight documents produced to GIS in discovery. (Doc. 62, Savage Decl. ¶

1    3).    Specifically,  he  recalls  that  GIS  pointed  to  the  two  documents  discussed  above—

2    GUARDIAN000001 and GUARDIAN000002,[2] *id.*—which Guardian had disclosed to GIS no later

3    than April 2021 and marked "CONFIDENTIAL" (Doc. 67, Rudin Decl. ¶ 6).  According to counsel

4    for GIS, counsel for Guardian represented that these documents did not need to be de-designated

5    and could be shared with American Freight because the warranty information contained in those

6    two documents originated with American Freight.  *Id.* at ¶ 4.

7         On October 7, 2024, counsel for GIS reached out to counsel for Guardian via email to

8    confirm a shared understanding that GIS could disclose two documents—GUARDIAN000001 and

9    GUARDIAN000002—Guardian had marked "CONFIDENTIAL" to American Freight.  (Doc. 62,

10   Black Decl. ¶ 14; Savage Decl. ¶ 5).  Counsel for GIS also sought confirmation that GIS could share

11   other documents with American Freight where it was clear that American Freight otherwise had

12   access to the information therein contained.  *Id.*  Counsel for Guardian responded and stated

13   Guardian's objection to sharing such documents with American Freight.  (Doc. 62, Black Decl. ¶

14   14; Savage Decl. ¶ 6).

15        On October 16, 2024, at the same meet and confer during which Guardian refused to stipulate

16   to an extension of the fact discovery deadline (*see supra*), GIS also requested that Guardian change

17   its position as to disclosure of documents to American Freight in order to facilitate efficient

18   discovery.  (Doc. 62, Black Decl. ¶ 15).  Guardian refused.  *Id.*

19        Consistent with the goal of facilitating more efficient discovery, and in part due to the alleged

20   deficiencies in Guardian's production of documents from American Freight to GIS (Doc. 62, Black

21   Decl. ¶ 4), GIS now seeks to share GUARDIAN000001 and GUARDIAN000002, which Guardian

22   marked confidential, with American Freight to narrow the focus of GIS's August 22, 2024 subpoena.

23                              **III.   LEGAL STANDARD**

24   **A.      Modifying a Pretrial Scheduling Order**

25        Generally, the Court is required to enter a pretrial scheduling order within 90 days of service

26   of the complaint. Fed. R. Civ. P. 16(b).  The scheduling order "controls the course of the action,"

27

28   [2] Based on representations from GIS, "[t]hese documents contain the personal information of over 44,000 end
     consumers, including the names and addresses of such individuals." (Doc. 62 at 16 n.11).

1    Fed. R. Civ. P. 16(d), unless the Court modifies the order based on a showing of "good cause," *see*

2    Fed. R. Civ. P. 16(b)(4).

3            When evaluating whether a party has demonstrated "good cause" under Rule 16, a Court

4    considers several factors including:

5            1) whether trial is imminent, 2) whether the request is opposed, 3) whether the
        non-moving party would be prejudiced, 4) whether the moving party was diligent
6        in obtaining discovery within the guidelines established by the court, 5) the
        foreseeability of the need for additional discovery in light of the time allowed for
7        discovery by the district court, and 6) the likelihood that the discovery will lead
        to relevant evidence.
8

9    *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting *United States*

10   *ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995), *vacated on other*

11   *grounds*, 520 U.S. 939 (1997)); *Williams v. Rocha*, No. 1:22-CV-00095, 2024 WL 4453334, at *2

12   (E.D. Cal. Oct. 9, 2024) (same).  The fourth factor is the most important, as the primary focus of a

13   Rule 16(b)(4) good cause inquiry "is upon the moving party's reasons for seeking modification"

14   and "primarily considers the diligence of the party seeking the amendment."  *Johnson v. Mammoth*

15   *Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  This is especially true where a party asks for

16   retroactive reopening of discovery rather than extension of the discovery deadline, as "a request for

17   an extension acknowledges the importance of a deadline," whereas a retroactive request can

18   "suggest[] that the party paid no attention at all to the deadline."  *W. Coast Theater Corp. v. City of*

19   *Portland*, 897 F.2d 1519, 1524 (9th Cir. 1990); *see also J.M. v. Cnty. of Stanislaus*, No.

20   118CV01034LJOSAB, 2019 WL 6879676, at *14 (E.D. Cal. Dec. 17, 2019).  Therefore, when a

21   party has not been diligent "the inquiry should end" and the motion to modify the schedule should

22   be denied.  *Johnson*, 975 F.2d. at 609.  However, where the pretrial schedule "cannot reasonably be

23   met despite the diligence of the party seeking the extension," Rule 16(b) grants a district court the

24   discretion to modify the schedule.  *Id.* (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983

25   amendment)).

26   **B.    Modification of a Stipulated Protective Order**

27          "Ninth Circuit precedent strongly favors disclosure to meet the needs of parties in pending

28   litigation."  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992).  Where "the

9

1   protective order allows a party or a non-party producing or disclosing a particular document to

2   initially determine whether such item is confidential without court intervention, [that] protective

3   order is akin to a blanket protective order, which is 'inherently subject to challenge and modification,

4   as the party resisting disclosure generally has not made a particularized showing of good cause with

5   respect to any individual document.'"[3] *Verizon California Inc. v. Ronald A. Katz Tech. Licensing,*

6   *L.P.*, 214 F.R.D. 583, 586 (C.D. Cal. 2003) (quoting *San Jose Mercury News, Inc. v. U.S. Dist. Ct.-*

7   *-N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999)).

8       Unlike the modification of a scheduling order where the burden lies with the party seeking

9   modification, where a party seeks to modify a stipulated protective order to permit disclosure to a

10  third party, the party resisting disclosure carries the burden of demonstrating "good cause" as to the

11  specific document(s) at issue.  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th

12  Cir. 2003).  To make such a establish "good cause" the party resisting disclosure must make a

13  showing of "specific prejudice or harm," *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712

14  F.3d 1349, 1355 (9th Cir. 2013)—mere reliance on the protective order "will not justify a refusal to

15  modify," *Foltz*, 331 F.3d at 1133.

16      In this district, the local rules require parties seeking a stipulated confidentiality orders to

17  make an initial showing of "particularized need" for protection as to *categories* of information.  *See*

18  E.D. Cal. Local Rule 141.1(c)(2). Therefore, the burden on the resisting party may be met through

19  a demonstration that the specific document(s) at issue are within the category of information the

20  parties previously agreed were to be protected based on their particularized showing under E.D.

21  Local Rule 141.1(c).

## IV.   DISCUSSION

### A.   GIS Has Demonstrated Good Cause to Modify the Pretrial Scheduling Order

#### 1.   GIS Acted Diligently

The Court begins by assessing the primary consideration and dispositive factor: whether GIS

---

28  [3] Here the Protective Order in question also expressly provides for modification, although without reference to the standard by which this Court should evaluate such a request.  (Doc. 38 ¶ 30).

was diligent.[4]  *See Johnson*, 975 F.2d at 609.

        *a.  As to RPM / OnPoint*

Guardian contends GIS should not be permitted to continue fact discovery as to RPM and OnPoint because GIS was not diligent in seeking this discovery while fact discovery was open. (Doc. 67 at 13–15).  The Court disagrees.

It is true that GIS was aware of RPM and OnPoint as entities related to this litigation prior to the close of fact discovery.  There is also evidence that, based on publicly available information not obtained from this litigation, counsel for GIS was aware of some type of sale of Guardian to OnPoint.  (Doc. 67, Ex. 2).[5]  However, the Court finds that Guardian's responses to GIS's interrogatories and requests for production were misleading and potentially false —excusing GIS' lack of further diligence.

In response to GIS' Request for Production No. 44, which sought "[a]ll documents concerning Guardian's sale of its warranty business," Guardian responded with various objections, as well as the statement "[t]his Responding Party has made a diligent search and reasonable inquiry to locate the documents responsive to this request but is unable to comply because such documents never existed."  (Doc. 62, Ex. G).  And in response to GIS' Interrogatory No. 7, which sought Guardian's "[i]dentif[ication of] all material facts concerning Guardian's sale of the warranty business," Guardian responded, "None. This Responding Party did not sell its warranty business."

---

[4] As an initial matter, Guardian makes a broad argument that GIS was not diligent in bringing this motion.  (Doc. 67 at 20). The Court finds that GIS' one-month delay in bringing this motion was not unreasonable.  *See Pizana v. SanMedica Int'l LLC*, 345 F.R.D. 469, 481 (E.D. Cal. 2022) (finding that a several week delay in filing a motion to modify the pretrial scheduling order); *see also Williamson on Behalf of At Home Bondholders' Liquidating Tr. v. Google LLC*, No. 15-CV-00966-BLF, 2018 WL 11414604, at *3 (N.D. Cal. Feb. 28, 2018) (noting that a two month delay in filing a motion to amend a scheduling order was not unreasonable in light of the parties' attempting to negotiate a modified schedule without court intervention); *cf. Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming the district court's finding that a four-month delay in seeking amendment of a scheduling order was too long to establish "good cause" under Rule 16(b)).

[5] While Guardian did not update its corporate disclosure statement *as required* by Federal Rule of Civil Procedure 7.1(b)(2) to reflect the sale, GIS seems to have become aware of the sale based on public records.  (Doc. 67, Ex. 2).

1   (Doc. 62, Ex. F).

2        At best, these responses are misleading.[6]  A sale did happen, and while the documents

3   themselves may have been in the custody of RPM and/or OnPoint (as the sale occurred between the

4   parent companies rather than by Guardian directly), material facts and documents regarding the sale

5   of Guardian's warranty business did exist.[7]  And GIS was diligent in seeking information about that

6   sale. *See* (Doc. 62, Ex. H, Black Decl. ¶ 8–9 (making clear on multiple occasions that GIS sought

7
8   information about the sale with respect to GIS' 30(b)(6) depositions); Doc. 62, Ex. F (seeking

9   information on the sale through service of interrogatories); Doc. 62, Ex. G (seeking information on

10  the sale through service of requests for production)); *cf. Carlin v. Dairyamerica, Inc.*, No. 1:09-CV-

11  0430 AWI EPG, 2016 WL 232315, at *5 (E.D. Cal. Jan. 20, 2016) ("the fact remains that the

12
13  misrepresentation accounts for the time between the deadline established by scheduling order and

    the time Plaintiffs could reasonably have amended the complaint").

14
15       Therefore, based on Guardian's representations, GIS' failure to seek discovery from RPM

16  and/or OnPoint was excusable, as the need to seek such discovery was not apparent until Rovin

17  testified after the formal close of fact discovery on September 17, 2024.  Only then, for the purposes

18  of this dispute, was GIS on notice that RPM had sold part of Guardian, including their warranty

19  business, to OnPoint.  *See* (Doc. 62, Ex. J); *cf. Centrify Corp. v. Quest Software, Inc.*, No. C 10-

20

21
    _____

22  [6] While the original discovery documents served by GIS on Guardian relating to Interrogatory No. 7 and Request for
    Production No. 44 are not before the Court, the Court observes that in other discovery requests by GIS that are before
23  the Court, GIS consistently defined "Guardian" as a version of "Guardian Protection Products, Inc. and its officers,
    directors, employees, partners, agents, representatives, attorneys, and other personnel thereof, as well as any
24  predecessors, subsidiaries, *corporate parents*, and affiliates, to the furthest extent the context permits." (Doc. 62, Ex.
    A (emphasis added); *see also* Doc. 67, Exs. 3, 4).  To the extent that discovery documents that included Interrogatory
25  No. 7 and Request for Production No. 44 also contained that definition, Guardian's responses would be inaccurate
    because a sale by "Guardian," as defined to include "corporate parents," did occur and documents reflecting that sale
    *did* exist and "Guardian" was in possession of material facts related to that sale.
26
    [7] To the extent that Guardian could properly impute knowledge of the sale to GIS based on discovery documents served
27  on Guardian in a separate but related matter (Doc. 67, Exs. 3, 4), the fact that those documents may have inquired about
    the sale more precisely, does not relieve Guardian of the burden of responding truthfully and accurately to discovery
28  requests in this action.  Moreover, as the Court as already noted regarding the May 2023 email, the Court considers the
    proper focus of the dispute to be Guardian's later misleading, and potentially contrary, representations in this litigation.

3873 CW, 2011 WL 6303362, at \*2 (N.D. Cal. Dec. 16, 2011) (finding that a party was diligent despite not acting on a fact they were aware of because they were not aware of its relevance); *Carlin*, 2016 WL 232315, at \*5 (finding the plaintiffs were diligent where the materiality of a witness was not discovered until after the deadline to amend occurred).  Because GIS reasonably relied on Guardian's representations in the present litigation, the Court finds GIS was not lacking in diligence as to OnPoint and RPM.

### b. As to Johnny Green

Guardian's primary argument that GIS was not diligent as to Green is that GIS "was fully aware that [Green] was a third party to these proceedings such that a subpoena would be required to obtain any discovery from him." (Doc. 67 at 16–18).  This Court is not persuaded.[8]

While this question is close, "[t]he decision to modify a scheduling order is within the broad discretion of the district court, and scheduling orders intended to facilitate the orderly progress of the litigation and alleviate case management problems." *Ornelas v. Cate*, 1:10-cv-02366-AWI-SAB (E.D. Cal. June 12, 2024).  Considering that (1) both parties reached out to the other party to schedule depositions in August 2024 ((Doc. 62, Ex. L; Doc. 67, Rudin Decl. ¶ 23); and (2) GIS had previously deposed Green and examined him on the stand at trial in a related matter, during which Guardian accepted service and was cooperative in facilitating the deposition and trial testimony (Doc. 68 at 10)—the Court is convinced that GIS was sufficiently diligent given a reasonable reliance on an established course of dealing between the parties informed by almost a decade's worth of litigation between this case and the related matter. *See Warren v. Winco Foods, LLC*, No. 1:22-CV-00594-SAB, 2023 WL 5336816, at \*14 (E.D. Cal. Aug. 18, 2023) (taking into account

---

[8] While GIS focuses on Guardian's alleged misconduct with respect to Green—informed by Guardian's conduct with respect to the other former employee (*see* Doc. 62, Ex. L, M, N, Black Decl. ¶¶ 5–7, 12)—by GIS' own admission, it can only provide the Court with their "susp[icion]" that Guardian is assisting Green in evading service. (Doc. 62 at 12). And, ultimately, this suspicion is not relevant to the inquiry at hand, which is on *GIS' diligence*. *See Johnson*, 975 F.2d at 609.

Case 1:20-cv-01680-SKO   Document 69   Filed 11/14/24   Page 14 of 20



parties' course of dealing); *cf. Am. Fire & Cas. Co. v. Sessions*, No. 1:24-CV-00082-CDB, 2024 WL 2209701, at \*4 (E.D. Cal. May 16, 2024) ("The reasonable diligence inquiry is fact and case-specific.").

While there was a delay between when GIS initially indicated its intent to depose Green and when it began attempts to serve Green, that delay is excusable given the unexpected delays related to Guardian refusing to accept service and the more than two-week time period between when GIS told Guardian it sought to depose Green and Guardian providing their last known contact information for him. (Doc 62, Ex. L, M; Doc. 67, Rudin Decl. ¶ 26). Indeed, GIS was proactive in following up about scheduling Green's deposition before Guardian represented they would not accept service on his behalf and about Guardian's last known contact information as to Green on several occasions. (Doc. 62, Ex. M).

Given this evidence of diligence within the context of a course of dealing, combined with the weight of the other factors (*see infra*) and this Court's broad discretion to ensure the orderly progress of this litigation with an eye towards alleviating case management problems, this Court finds that GIS was sufficiently diligent.[9]

    *c.  As to American Freight*

Guardian contends that GIS was not diligent in seeking discovery from American Freight prior to the fact discovery deadline (Doc. 67, p 18–20). This contention is puzzling. GIS'

---

[9] The Court observes that GIS has encountered difficulty in serving Green. The Court advises the parties that it may be willing to entertain a motion to allow substitute service via an alternative method if GIS remains unable to serve Green. *See RP Golden State Mgmt., LLC v. Ohio Sec. Ins. Co.*, No. 1:19-cv-00600-DAD-JLT, 2020 WL 4748324, at \*5 (E.D. Cal. Aug. 17, 2020). The Court notes that "[c]ourts are more inclined to grant such alternative service where the serving party has provided sufficient evidence of its earlier diligence in attempting to effectuate personal service," *Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351, at \*5 (N.D. Cal. Oct. 5, 2015), or where there is evidence that the party is evading service, *cf. Ortiz v. Lucero Ag Servs., Inc.*, No. 1:23-CV-01319-JLT-EPG, 2024 WL 3029254, at \*3 (E.D. Cal. June 17, 2024) ("Plaintiffs tried to serve Defendants on four prior attempts but were unsuccessful despite the attempts being during what are typically normal business hours and there being lights on at the premises. These circumstances indicate that Defendants may be evading service."). Any motion for substituted service shall be filed and heard sufficiently in filed and heard sufficiently in advance of the reopened discovery cutoff so that the Court may grant effective relief within the allotted discovery time.

14

diligence as to its subpoena on American Freight is only relevant to the present dispute insofar as Guardian believes there is a dispute as to whether GIS is entitled to complete discovery related to GIS' August 22, 2024 subpoena on American Freight.  But GIS' entitlement to complete this discovery as to American Freight has been well-settled by the parties themselves.  Indeed, Guardian has explicitly and repeatedly agreed to facilitate the completion of GIS' timely-served discovery— including the subpoena on American Freight. (Doc. 62, Ex. C).  Therefore, the Court finds there is no dispute as to GIS' ability to complete discovery stemming from GIS' August 2024 subpoena of American Freight. [10]

2. <u>The Other Factors Weigh in Favor of Modification</u>

The balance of the other factors also weighs in favor of modification.  The currently scheduled trial date, August 12, 2025, is not imminent relative to the limited modification requested. *Cf. Huerta v. Cnty. of Tulare*, No. 1:17-CV-01446-EPG, 2024 WL 307786, at *3 (E.D. Cal. Jan. 26, 2024) (finding a June trial date was not "imminent" in January of the same year).

While the request is opposed, Guardian has not demonstrated that reopening fact discovery for a short period and limited purpose would result in significant "additional costs and major alterations in trial tactics and strategy," nor would such an extension meaningfully "delay[] the proceedings, especially the trial date." *Morris v. Sutton*, No. 1:17-cv-01488-AWI (SAB), 2019 WL 2994291, at *5 (E.D. Cal. July 9, 2019).  Therefore, Guardian has not credibly demonstrated that it would be prejudiced by the reopening of fact discovery for several weeks and other corresponding minor adjustments to the case schedule.

As to foreseeability, the Court evaluates each request in turn.  First, the Court finds that it

---

[10] Even had Guardian not agreed, the Court finds that GIS has been diligent as to seeking discovery from American Freight. *See* (Doc. 62, Ex. M, Black Decl. ¶ 12 (providing examples of multiple inquiries made by GIS of Guardian as to the status of this discovery)); (Doc. 62, Black Decl. ¶ 4 (detailing how Guardian did not produce what it had received from American Freight *on the day fact discovery closed* and *without metadata, Bates stamps, or identifying documentation*—because Guardian waited *six months* for American Freight to produce a single custody document)); (Doc. 62, Exs. A, B, Black Decl. ¶ 11 (describing how GIS responded Guardian's continued delay by drafting its own subpoena the day after the parties' August 24, 2024 meet and confer)).

1   was not foreseeable to GIS that it would need to subpoena records from RPM and OnPoint prior to

2   the close of discovery for the reasons discussed above.  *See Morris v. Sutton*, No.

3   117CV01488AWISAB, 2019 WL 2089496, at *5 (E.D. Cal. May 13, 2019) (foreseeability may

4   follow from a court's analysis of diligence); *Washington v. Essex*, No. 2:12-CV-03054-DAD-DB,

5   2022 WL 17417871, at *7 (E.D. Cal. Dec. 5, 2022) (same).

6       Second, the Court finds that it was foreseeable to GIS that GIS would be interested in

7   deposing Green.  However, based on GIS' experience with this witness in a related litigation—in

8   which Green was made available as a deponent and a trial witness by Guardian on several occasions

9   (Doc. 68 at 10)—the Court finds it was not foreseeable that Guardian would refuse to accept service.

10   *See Warren*, 2023 WL 5336816, at *14 (finding that reliance on the course of negotiation negated

11   the negative weight of the foreseeability factor); *cf. Soto v. Cnty. of Sacramento*, No. 2:19-CV-

12   00910-TLN-DB, 2021 WL 2402524, at *6 (E.D. Cal. June 11, 2021)  (ruling for a plaintiff that had

13   argued that while it was not unforeseeable that plaintiff would need to retain an expert, but that it

14   was "unforeseeable that [the plaintiff] would be unable to compete [that] discovery due to [] disputes

15   over [an expert's] representation").[11]

16       As to the last factor, contrary to Guardian's argument, (Doc. 67 at 15–16, 21),   GIS has

17   demonstrated that there is a reasonable likelihood that the limited and narrow fact discovery it seeks

18   will lead to evidence relevant to GIS' claims and defenses—specifically relating to evidence

19   regarding the reason(s) for Guardian's termination of GIS—as well as to GIS' assessment of

20   damages—specifically the valuation of Guardian's warranty business at the time of sale to OnPoint.

21       In sum, the balance of the factors weighs in favor of extending the fact discovery deadline

---

[11] Because the Court has found the parties agreed to complete the timely-served discovery as to American Freight, it need not decide whether the need for that discovery was foreseeable. But even if there were no such an agreement, the Court would find GIS was entitled to complete discovery as, while it was foreseeable that more time was need to complete discovery related to American Freight (Doc. 62, Ex. C, Black Declaration ¶ 11), GIS justifiably relied on Guardian's representations that it would not object to finishing previously served discovery. (Doc. 62, Ex. C, Black Declaration ¶¶ 14–15, Savage Decl. ¶¶ 3–5).  Due to this justifiable reliance, it was not foreseeable to GIS that they would need to seek court intervention to complete discovery as to American Freight.

such that the Court shall grant the motion to modify the pretrial schedule to reopen fact discovery.

**B.      Guardian Has Not Made a Showing of Good Cause Justifying a Refusal to Modify the Protective Order.**

GIS contends that either paragraph 14 or 17 of the Protective Order (Doc. 38) permit disclosure of the lists of allegedly missing registrations to American Freight (GUARDIAN 000001 and GUARDIAN 000002). (Doc. 62 at 19–21). Guardian disagrees, and while acknowledging the underlying raw data in the two documents is derived from American Freight, contends that the provision of those documents to American Freight "risks potential competitive harm" because they are "internal to Guardian" and prepared "in a specific manner and format that Guardian has no reason to believe would be known to any of its competitors." (Doc. 67 at 21–22).

The Court is not convinced GUARDIAN 000001 and GUARDIAN 000002 fall into either exception of the Protective Order because the documents themselves have never been provided to American Freight and the information within the documents was obtained through the course the parties' present litigation.[12] As GIS asks, in the alternative, for a modification of the Protective Order, the Court further considers whether a modification of the Protective Order is warranted.

When considering whether a modification might be appropriate, on the one hand, the Court observes that Guardian has demonstrated a particularized harm consistent with the necessary showing under Local Rule 141(c)(2), but only as to the disclosure of the proprietary "format" in which the information is presented. Guardian has not demonstrated a particular harm as to the limited disclosure to American Freight of the underlying information itself. (Doc. 67 at 22). Indeed, Guardian cannot demonstrate harm associated with the disclosure of that underlying information, as by their own admission, American Freight is already in possession of this information. (Doc. 62,

---

[12] Insofar as GIS seeks to disclose to American Freight correspondence on the face of which American Freight employees are identified as authors or recipients, such disclosure is expressly provided for in the Stipulated Protective order and any further "declaration" from this Court is unnecessary. (Doc. 38 ¶ 14). To the extent GIS seeks a declaration as to documents other than GUARDIAN 000001, GUARDIAN 000002, and correspondence on the face of which American Freight employees are identified as authors or recipients, such documents are not before this Court and therefore the Court cannot make any declarations as to their status under the Protective Order.

Ex. T).  On the other hand, the Court also observes that GIS' request for a modification of the Protective Order that would allow GIS to disclose to American Freight information that American Freight already possesses, is reasonable and in line with the spirit of the exceptions to confidentiality provided for in the stipulated Protective Order. (Doc. 62 at 19–21; Doc. 68 at 7–8).

Therefore, the Court finds that it is appropriate to modify the Protective Order to allow GIS to disclose the information in GUARDIAN 000001 and GUARDIAN 000002 for the limited purpose of disclosure to American Freight based on the demonstrated need to effectuate efficient discovery, without disclosing the proprietary formatting of GUARDIAN 000001 and GUARDIAN 000002. *Cf. Graves v. Whitmore*, No. 517CV01086JGBSPX, 2022 WL 17361976, at \*5 (C.D. Cal. Mar. 10, 2022) ("Where the court concludes the release of discovery material may result in 'particularized harm,' and 'the private interest in protecting the information outweighs the [need for] disclosure,' the court must then evaluate whether redacting the confidential information would mitigate the harm and permit disclosure." (citations omitted)).

Because the Court finds that Guardian is in the best position to produce documents mitigating their own concern about disclosure of their proprietary formatting, the Court shall order Guardian to create two documents, to be labeled "GUARDIAN 000001-1" and "GUARDIAN 000002-1," that are to contain all of the raw data contained in GUARDIAN 000001 and GUARDIAN 000002 but that is not prepared in the same manner and format as Guardian's internal documents.  Guardian is further ordered to produce those two documents to GIS for the purposes of providing those two documents to American Freight to facilitate efficient discovery.  The Court emphasizes that Guardian is to ensure that the information included in GUARDIAN 000001-1 and GUARDIAN 000002-1 does not omit, modify, or otherwise alter the underlying information other than to redact any proprietary formatting.  Any omissions, modifications, or alterations constituting a material difference between the underlying information contained in GUARDIAN 000001 and GUARDIAN 000002 and that contained in GUARDIAN 000001-1 and GUARDIAN 000002-1,

shall result in the imposition of sanctions.

### V.   CONCLUSION AND ORDER

Based on the foregoing, **IT IS HEREBY ORDERED:**

1.  The deadline by which to complete the permitted fact discovery in this case is

    **EXTENDED to December 20, 2024** for the following purposes:

    a.  Obtaining third-party discovery from OnPoint and/or RPM on Guardian

        and OnPoint's partnership in the furniture warranty business beginning

        in or around January 2021, and the sale of Guardian from RPM to

        OnPoint in or around January 2023;

    b.  Serving a deposition subpoena on and taking the deposition of Johnny

        Green; and

    c.  Completing all previously served fact discovery, including with respect

        to obtaining information from American Freight and raising any related

        disputes concerning that discovery to the Court per the parties' prior

        agreement.

2.  The current case schedule (Doc. 61) is MODIFIED as follows:

| Event | Continued Date |
|---|---|
| Non-Expert Discovery | December 20, 2024 |
| Expert Disclosures | January 8, 2024 |
| Rebuttal Expert Disclosures | January 22, 2025 |
| Expert Discovery | February 5, 2025 |
| Non-Dispositive Motion Filing | February 5, 2025 |
| Non-Dispositive Motion Hearing | March 12, 2025 |
| Dispositive Motion Filing | February 12, 2025 |
| Dispositive Motion Hearing | March 19, 2025 |
| Deadline to Request Settlement Conference | May 14, 2025 |
| Pretrial Conference | June 18, 2025, at 2:30 p.m. |
| Trial | August 12, 2025, at 8:30 a.m. |

3.  Within **<u>seven days</u>** of the signing of this order,

    a.  The parties shall meet and confer and file a stipulated modification to the Protective Order allowing the disclosure of GUARDIAN 000001-1 and GUARDIAN 000002-1 to American Freight, notwithstanding any confidentiality designation of GUARDIAN 000001 and GUARDIAN 000002 and subject to the parties' agreement as to any applicable compliance obligations to be imposed on American Freight. (*See, e.g.*, Doc. 38, Ex. A).

    b.  Guardian shall produce two documents, labeled GUARDIAN 000001-1 and GUARDIAN 000002-1, which contain all of the information contained in GUARDIAN 000001 and GUARDIAN 000002 in a raw format, excluding Guardian's proprietary formatting, to GIS for the purposes of providing those two documents to American Freight to facilitate efficient discovery.

IT IS SO ORDERED.

Dated:   **November 14, 2024**          /s/ *Sheila K. Oberto*

                                          UNITED STATES MAGISTRATE JUDGE